FILED
2021 Jul-30  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY DANE TILLMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-1043-KOB-GMB |
| | ) | |
| WARDEN GEORGE EDWARDS, | ) | |
| *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION

On July 1, 2018, Petitioner Timothy D. Tillman filed this habeas corpus action *pro se* pursuant to 28 U.S.C. § 2254. Doc. 1.[1] Tillman is an Alabama state prisoner serving a life sentence for murder. The action is before a Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(b)(3)(A). For the following reasons, the Magistrate Judge recommends that the court deny Tillman's habeas petition.

## I. RELEVANT PROCEDURAL HISTORY

### A. Trial Proceedings

A Grand Jury sitting within Shelby County, Alabama returned an indictment

---

[1] After Tillman filed his *pro se* petition, David I. Schoen appeared as counsel for him. Doc. 15.

charging Tillman with the murder of his wife. Doc. 11-1 at 3.  After a jury convicted Tillman of murder, the trial court sentenced him to life imprisonment. Doc. 11-11 at 22–23, 31, 42–43.  Bryan Stevenson and Charlotte Morrison, two attorneys with the Equal Justice Initiative, represented Tillman on direct appeal. Doc. 11-11 at 65–66. The Alabama Court of Criminal Appeals ("ACCA") reversed Tillman's conviction (Doc. 11-7), the Alabama Supreme Court denied certiorari review, and the ACCA entered a certificate of judgment on February 10, 2012. Docs. 11-8 & 11-9.

**B.    Retrial Proceedings**

**1.    *Pretrial Issues***

On February 27, 2012, Tillman filed an affidavit asking the court to appoint him an attorney for his retrial. Doc. 11-12 at 43.  Circuit Court Judge Dan Reeves agreed to appoint the Shelby County Public Defender's Office to represent Tillman, and Dennis Jacobs and Jodie Tallie were assigned to the case. Doc. 11-12 at 42–43.

On April 24, 2012, the court entered an order setting the case for a pretrial docket on May 8, 2012 and for trial on June 18, 2012. Doc. 11-12 at 50.  The order informed the parties that no continuances would be granted except for extreme circumstances and also mentioned that the case would be placed on the court's trial docket for the next month and given a priority setting if any circumstances did necessitate a continuance. Doc. 11-12 at 50.

On May 1, 2012, the court held a status conference and determined that the

case would remain on the June 18, 2012 trial docket. Doc. 11-12 at 48, 51.  After the conference, the State filed a notice of intent to introduce Rule 404(b) evidence (Doc. 11-13 at 3–5), and defense counsel filed motions to exclude certain evidence. Doc. 11-13 at 7–8.  Tillman's counsel also filed a response to the State's notice and a motion to suppress any evidence of Tillman's 1999 misdemeanor conviction for solicitation of prostitution in Minnesota. Doc. 11-13 at 9.  The court set the motions for hearing on June 12, 2012. Doc. 11-12 at 50; Doc. 11-13 at 10.

On May 23, 2012, Tillman wrote a letter to ACCA Judge Sam Welch claiming that his counsel had just received three boxes of discovery and seven hours of video recordings. Doc. 11-26 at 92.  Tillman did not have a pending case before Judge Welch at the time.  In the letter, he asserted that Judge Reeves had set a trial date for June 18 and refused to grant a continuance. Doc. 11-26 at 92.  Tillman stated that he needed the continuance to allow his attorney more time to prepare for trial, and because his wife was a key witness but her job would be in jeopardy if she missed work. Doc. 11-26 at 92.  He also claimed that the State had been granted continuances before his first trial and said that he was asking for "simply 30–60 days." Doc. 11-26 at 92–93.  The ACCA received Tillman's letter on June 4, 2012.[2]

---

[2] The ACCA construed Tillman's letter to it as a mandamus petition and ordered Tillman to file a certificate of service within 14 days evidencing that he served a copy of the June 4, 2012 petition on the trial court and all parties to the action in the trial court. Doc. 11-13 at 15.  There is nothing in the record showing that Tillman complied.

Doc. 11-13 at 15.

Tillman contends that he met with his lawyers, Jacobs and Tallie, a few days before June 4, 2012 and told them that he wanted a continuance to allow David Schoen to represent him at trial.[3] Doc. 11-27 at 5–6.  Tillman asserts that Jacobs told him that was not going happen and that Judge Reeves did not like him. Doc. 11-27 at 5.  After further conversation, both Jacobs and Tallie reiterated that Judge Reeves would not grant the continuance. Doc. 11-27 at 6.

On June 11, 2012, defense counsel nevertheless filed a motion to continue the trial to August 13, 2012. Doc. 11-13 at 13.  The grounds for the motion largely mirrored those in Tillman's letter to Judge Welch.  More specifically, counsel argued that (1) Tillman's wife and parents could not be present for the trial scheduled on June 18, (2) Tillman did not believe his counsel had adequate time to prepare for trial between the date of the appellate decision and the June 18 setting, and (3) the State had recently disclosed a witness who claimed Tillman admitted "certain acts" that were extremely damaging to the defense and changed the defense theory and presentation of the case. Doc. 11-13 at 13.  The court held a hearing June 12, 2012 during which counsel presented arguments on the pending evidentiary motions and the motion to continue. Doc. 11-13 at 14; Doc. 11-16 at 173.  The trial court denied

_____

[3] The information in this paragraph is contained in Tillman's post-conviction response to his Rule 32 petition.

the motion to continue (Doc. 11-13 at 14; Doc. 11-16 at 173), but did not rule on the motions *in limine* or motion to suppress.

On Friday, June 15, 2012, the trial court received a *pro se* "official written notice" from Tillman, signed on June 12, 2012, stating that he wanted David Schoen to represent him as his "counsel of choice" at trial. Doc. 11-13 at 16.  Tillman declared that Schoen had agreed to represent him *pro bono*, but could not be prepared for trial if it began as scheduled on the next Monday, June 18, 2012. Doc. 11-13 at 16.  Tillman further claimed that Jacobs had expressed that he needed additional time to prepare for trial. Doc. 11-13 at 16.  Tillman requested a continuance and to have Schoen represent him at trial. Doc. 11-13 at 17.

Attached to Tillman's notice was a declaration by Schoen dated June 13, 2012. Doc. 11-13 at 18.  Schoen, an experienced criminal defense attorney licensed to practice in Alabama, detailed his introduction to Tillman by Charlotte Morrison in April 2012 and multiple contacts with Tillman and Jacobs from April 2012 through June 2012, including conversations with Jacobs about the possibility of representing Tillman, meeting with Tillman in prison, and work he had done on Tillman's behalf. Schoen stated that he told Jacobs he could not appear at trial on June 18 because of conflicting commitments, and had also mentioned that he did not understand how any lawyer could be prepared for trial in such a short timeframe. Doc. 11-13 at 20. Schoen ended by stating that he would represent Tillman *pro bono*, either with or

without Jacobs, if he was afforded investigative funds and sufficient amount of time to prepare, which to Schoen meant a continuance to "at least the end of August 2012." Doc. 11-13 at 22–31 (emphasis omitted).

The trial court did not address Tillman's letter before trial began on the next business day, June 18.  However, after releasing the jury at the end of the first day, the State argued that Tillman's letter to the ACCA and his June 15 letter should be stricken from the record as improperly filed pleadings because the State had not received notice of them. Doc. 11-15 at 78.  The trial court stated that it did not know whether it was necessary to address the letters because "communication [must] go through [Tillman's] attorney of record, not [Tillman] or through some other source." Doc. 11-15 at 77–78.  The trial considered Tillman's letter to be an attempt to move for a trial continuance. Doc. 11-15 at 77–78.  Defense counsel responded that he was not party to the letter so he did not take a position on the requested relief. Doc. 11-15 at 78.  The trial court struck the pleadings from the record. Doc. 11-15 at 78.

On June 21, 2012, after the State rested its case in chief, Tillman gave his counsel a handwritten copy of a renewed motion for continuance. Doc. 11-13 at 24. In it, he contended that no attorney could be adequately prepared for trial under the current time constraints given the volume of discovery the State had produced. Doc. 11-13 at 24.  Tillman referenced his June 15 *pro se* motion and again attached Schoen's declaration, highlighting Schoen's opinion that he could not be prepared

for trial and that no attorney could be prepared in such a short time. Doc. 11-13 at 25.  Tillman argued that the trial court's refusal to grant him a continuance denied him his preferred counsel and rendered his current counsel ineffective. Doc. 11-13 at 25.  Tillman's counsel presented the motion to the court. Doc 11-16 at 172.

The court brought counsel and Tillman to the bench.  The court received the motion, but stated that the motion would be denied at that point in the trial. Doc. 11-16 at 174.  He explained that he already denied a motion to continue that was argued by counsel on June 12, and he would not reconsider that ruling. Doc. 11-16 at 174. The State objected to Schoen's declaration on the basis that Schoen had not entered a notice of appearance and his declaration was "full of hearsay." Doc. 11-16 at 174. In response, the court stated:

> I advised Mr. Tillman on several occasions—each occasion that he came to Court that if he was going to hire a lawyer he needed to proceed to do that and not wait until the last minute and try to do that.  That didn't happen.  I'm not going to receive it now.  Mr. Schoen needs to make some pleading on your behalf.  He is certainly entitled to do that but not by way of a presentation to you as part of a motion.  If counsel wants to make a proffer as to what was attached we can certainly mark that and put it in.

Doc. 11-16 at 174.  Jacobs then stated that the "declaration is that myself could not possibly be effective assistance of counsel and prepared considering the limited time and that if he had the case and had more time then he could adequately prepare it." Doc. 11-16 at 174.  The court denied this motion to continue. Doc. 11-16 at 174.

### 2.      Evidence at Trial, Verdict, Sentence, and Direct Appeal

The critical issue at trial was whether Tillman intentionally shot and killed his

wife.  Tillman claimed that the shotgun accidentally discharged, but as evidence of

intent the State presented testimony establishing that Tillman led a double life. Doc.

11-13 at 66.[4]  In particular, the State proved that Tillman, who was the pastor of an

Assemblies of God church, changed his name and created another identity, was

engaged to be married to another woman, and expressed his intent to go forward

with that wedding only days before the shooting. Doc. 11-13 at 66; Doc. 11-20 at 3.

His fiancé and her family believed he was an officer with the United States Navy

SEALs. Doc. 11-13 at 66; Doc. 11-20 at 3.  A divorce would have prevented Tillman

from keeping his position as the pastor of his church, which was his sole source of

income.[5] Doc. 11-20 at 4.

Around this time, Tillman proposed that the church include turkey shoots as

as an activity during its Fall Festival. Doc. 11-20 at 2.  After each turkey shoot,

church members testified that the guns were checked to make sure they were

---

[4] In reciting the pertinent evidence presented at trial, the court cites to the trial court's order on the
motion for new trial in which Judge Reeves summarized the evidence presented at trial. Doc. 11-
13 at 66–67.  The court also cites to the ACCA's discussion of the evidence presented at trial in
its order on direct appeal. Doc. 11-20.  Tillman does not object to the factual summaries
incorporated into either order.

[5] Sometime before the murder, Tillman reversed his name change such that his legal name
conformed with the name listed on his wife's life insurance policy. Doc. 11-13 at 66.  There was
also testimony that around this time the church was seeking to perform a background check on
Tillman, which could have revealed his double life and ended his employment. Doc. 11-13 at 66.

unloaded. Doc. 11-13 at 66.  They also testified that Tillman had exclusive control of the weapons, implying that he was the only person who could have loaded the shotgun before it discharged. Doc. 11-20 at 3.  Finally, Kelly Blancet testified that Tillman admitted to him that the shooting was not an accident while the two had been housed in the Shelby County Jail after Tillman's arrest. Doc. 11-20 at 4.

As part of his defense, Tillman called Lawden Yates, a firearms expert, who testified that the shotgun could have discharged accidentally and explained the gun's firing mechanism. Doc. 11-20 at 4.  He also testified that the safety on the gun was not reliable and that "it was possible for someone who inspected only the chamber of the shotgun to erroneously conclude that the shotgun was unloaded." Doc. 11-20 at 4.  Tillman also called Johnny Cupps, who testified that Blancet did not have a reputation for truthfulness. Doc. 11-16 at 197.

The jury convicted Tillman of murder. Doc. 11-13 at 27, 42.  Judge Reeves sentenced Tillman to life in prison, and Tillman filed a notice of appeal. Doc. 11-13 at 52–53, 57.  The trial court appointed Roger Brannum to represent Tillman on appeal. On direct appeal Tillman raised two claims: (1) that he was unfairly prejudiced by inadmissible prior bad acts evidence, and (2) that the state presented insufficient evidence to convict him of intentional murder. Doc. 11-18.  The ACCA affirmed Tillman's conviction (Doc. 11-20), the Alabama Supreme Court denied Tillman's petition for certiorari review, and a certificate of judgment issued on

March 14, 2014. Docs. 11-24 & 11-25.

**C.     Rule 32 Petition**

On February 18, 2015, Tillman filed a *pro se* Rule 32 petition and raised the

following claims:

1.     Ineffective assistance of appellate counsel for failure to argue that Tillman was denied the right to counsel of his choice because his preferred attorney would have represented him on a pro bono basis and sought only a two-month continuance.

2.     Ineffective assistance of trial counsel for the failure to:

a.     properly argue for a continuance to permit Tillman to obtain another attorney of his choice to represent him;

b.     object to the exclusion of the public during voir dire;

c.     object when a juror slept throughout much of the second day of trial;

e.     file a motion in limine or other pretrial motion to suppress the contents of Tillman's videotaped interrogation before displaying the video to the jury;

f.     object to references to prior bad acts (a solicitation conviction) in Minnesota in the videotaped interrogation;

g.     object at crucial moments during the cross-examination of the defense's firearms expert; and

h.     sufficiently test the State's case.

Doc. 11-26 at 68–79.   The State filed a motion to dismiss Tillman's petition

(Doc. 11-26 at 82–101), and Tillman filed an objection. Doc. 11-26 at 107–09;

Doc. 11-27 at 1–22.   The court entered an order summarily denying Tillman's

petition under Alabama Rule of Criminal Procedure 32.3.[6] Doc. 11-27 at 27.

Tillman appealed the denial of his Rule 32 petition, and David Schoen represented him in this appeal. Doc. 11-28.  Tillman raised three primary issues in the appeal.  First, he argued that the trial court denied him the fundamental right to counsel by refusing to allow him to be represented at trial by his counsel of choice. Doc. 11-28 at 32–40.  Next, he contended that the trial court erred by summarily denying his Rule 32 petition without a hearing. Doc. 11-28 at 40–45.  Finally, Tillman claimed that he was denied the right to effective assistance of trial and appellate counsel for a number of reasons. Doc. 11-28 at 45–68.

The ACCA entered a memorandum opinion affirming the denial of Tillman's Rule 32 petition. Doc. 11-31.  The ACCA rejected Tillman's claim that the trial court denied him the fundamental right to be represented at trial by his counsel of choice for two primary reasons: (1) because of the timing of his request, which would have necessitated a trial continuance, permitting Tillman new counsel at such a late date "would have frustrated the public interest in the fair and efficient administration of justice"; and (2) the motion to substitute counsel "was untimely and the court properly prohibited Tillman from using his ability to discharge his attorney as a way

---

[6] Under Rule 32.2, the "petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.  The state shall have the burden of pleading any ground of preclusion, but once a ground for preclusion is pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of evidence."

to delay proceedings." Doc. 11-31 at 7 & 8 (internal citations and quotation marks omitted).  Because it found this claim to be meritless, the ACCA rejected Tillman's argument that his trial and appellate counsel were ineffective for failing to raise it. Doc. 11-31 at 10–11, 15.

The ACCA also rejected Tillman's remaining ineffective assistance of counsel claims, stating that "Tillman merely made generic allegations of prejudice and failed to state specific facts indicating how he was prejudiced by counsel's actions," and therefore "Tillman failed to meet his burden to plead the full factual basis of this claim." Doc. 11-31 at 13.  The ACCA affirmed the dismissal without a hearing under Rules 32.3 and 32.6(b). Doc. 11-31 at 13.  The ACCA also found that Tillman insufficiently plead his claim that his counsel failed to subject the State's case to meaningful, adversarial testing (Doc. 11-31 at 13), and rejected as meritless any allegation that the cumulative effect of counsel's errors rendered his counsel ineffective. Doc. 11-31 at 13–15.  Finally, the ACCA affirmed the circuit court's refusal to hold an evidentiary hearing. Doc. 11-31 at 15.  The Alabama Supreme Court denied certiorari on March 16, 2018 and issued a certificate of judgment. Docs. 11-35 & 11-36.

## D.   Federal Habeas Petition

On July 1, 2018, Tillman filed the instant habeas petition *pro se* and raised the following claims:

1.    Ineffective Assistance of Trial Counsel

    a.    Trial counsel failed to properly argue for a continuance to permit Tillman to obtain the attorney of his choice to represent him.

    b.    Trial counsel failed to object to the use of evidence regarding a prior Minnesota solicitation conviction as violating Rule 404(b) of the Alabama Rules of Evidence.

    c.    Trial counsel failed to object to the exclusion of the public during voir dire.

    d.    Trial counsel failed to object when a juror slept during trial.

    e.    Trial counsel failed to move to suppress Tillman's videotaped interrogation.

    f.    Trial counsel failed to object at crucial moments during the cross-examination of the defense's firearms expert.

    g.    Trial counsel did not sufficiently test the State's case.

    h.    Trial counsel refused to subpoena records and individuals and did not sufficiently cross-examine witnesses.

2.    Ineffective Assistance of Appellate Counsel

    a.    Appellate counsel failed to argue that Tillman was denied the right to counsel of his choice because his preferred attorney would have presented him on a pro bono basis and only sought a two-month continuance.

    b.    Appellate counsel did not sufficiently communicate with Tillman or provide Tillman a copy of his appellate brief before filing it.

3.    Trial Court Errors

a.   The trial court erred in not conducting an evidentiary hearing on Tillman's Rule 32 petition.

b.   The trial court erred when it admitted evidence of Tillman's solicitation conviction at trial.

c.   The trial court erred when it denied Tillman's motion for new trial on the ground that the evidence was insufficient to convict him of intentional murder.

d.   The trial court erred when it denied Tillman's motion for a continuance for counsel of choice and more adequate trial preparation.

e.   The trial court appointed Tillman an appellate lawyer with the knowledge that this lawyer would not competently represent him.

Doc. 1 at 1–22.

The respondents, Warden George Edwards and the Attorney General of the State of Alabama, answered the petition and argued that Tillman is not entitled to habeas relief because his petition is time barred, and at any rate his claims are meritless or procedurally defaulted. Doc. 11 at 10–37. The court notified the parties that the petition would be considered for summary disposition and made Tillman aware of the provisions and consequences of this procedure under Rule 8 of the Rules Governing Section 2254 Cases. Doc. 12. Tillman filed a reply. Doc. 20. His petition is now ripe for review.

## II. STATUTE OF LIMITATIONS

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

provides a one-year limitations period for filing a habeas action under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d)(1). This limitation period begins to run from the latest of four dates:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Tillman does not allege any facts suggesting that § 2244(d)(1)(B), (C), or (D) triggered the limitation period. Instead, the facts before the court establish that § 2244(d)(1)(A) is the trigger for Tillman's limitation period. For this reason, the limitation period began to run on the date that Tillman's conviction became final by the conclusion of direct review or the expiration of his time for seeking direct review.

Where, as here, a petitioner appeals his conviction to the Alabama Supreme Court but does not file an appeal to the United States Supreme Court, his conviction

is final under § 2244(d)(1)(A) on the 90th day after the date of the state-court order denying review. *See, e.g., Green v. Sec'y, Dep't of Corr.*, 877 F.3d 1244, 1247 (11th Cir. 2017) (citing *Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235, 1236–37 (11th Cir. 2004)). The Alabama Supreme Court denied Tillman's petition for writ of certiorari and issued a certificate of judgment on March 14, 2014. Doc. 11-25 at 2. Tillman had 90 days—or until June 12, 2014—to file a petition for writ of certiorari in the United States Supreme Court. Tillman did not do so and the one-year limitations period to file a § 2254 petition with this court began to run on the following day, June 13, 2014. *See Green*, 877 F.3d at 1247 n.3 ("The limitation period began to run the day after the conviction and sentence became final . . . .") (citing Fed. R. Civ. 6(a)(1)); *San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (holding that the day after the event marking finality is first day of AEDPA's one-year limitation period because Fed. R. Civ. P. 6(a)(1) excludes the day of the event that triggers a time period from its computation). His limitations period ran on June 15, 2015,[7] but Tillman did not file the instant federal petition until July 1, 2018. Doc. 1. Tillman's petition therefore is outside of the statute of limitations on its face.

---

[7] Tillman's statute of limitations would have expired on June 13, 2015. *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (noting that the "limitations period expires on the anniversary of the date it began to run"). However, June 13, 2015 fell on a Saturday, so Tillman had until Monday, June 15, 2015 to file his federal habeas petition. *See* Fed. R. Civ. P. 6(a)(1)(C) (providing that when computing any time period "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").

Because the limitation period expired before Tillman filed his federal habeas petition, his claims are untimely unless saved by statutory or equitable tolling. Under § 2244(d)(2), the period of limitations is tolled while "a properly filed application for State post-conviction or other collateral review" of the underlying judgment or claim remains pending. *Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006).   The limitation period also may be equitably tolled if the petitioner shows that he has been pursuing his rights diligently but some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted). In this instance, statutory tolling saves Tillman's petition.

Tillman filed his Rule 32 petition on February 18, 2015. Doc. 11-26.  Because the one-year limitations period for filing a § 2254 petition with this court began to run on June 13, 2014, 250 days had expired from the statute of limitations when he filed his Rule 32 petition.  The limitations period was tolled from February 18, 2015 until March 16, 2018, when the Alabama Supreme Court denied his certiorari petition. *See* 28 U.S.C. § 2244(d)(2) (providing that the one-year limitation period is tolled during the pendency of "a properly filed application for State post-conviction or other collateral review" of the underlying judgment).  When the limitation countdown resumed, Tillman had 115 days to file his federal habeas petition.  Tillman filed this habeas action 107 days later, on July 1, 2018.  Because

17

of statutory tolling, the petition is timely.

## III.  FEDERAL HABEAS REVIEW STANDARDS

Although his petition is timely, Tillman faces other procedural hurdles before the court can review of the merits of his claims.  These impediments include the exhaustion requirement and procedural default for failure to exhaust.  And even if he exhausted all of his claims, ADEPA places restrictions on the scope of review. The court addresses these standards below.

### A.    Exhaustion and Procedural Default

A person in custody pursuant to the judgment of a state court may file an application for a writ of habeas corpus on the grounds that his conviction violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). However, a state prisoner generally merits no relief under § 2254 unless he exhausted the remedies available to him in the courts of his state of conviction. *See* 28 U.S.C. § 2254(b)(1)(A); *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004).  The exhaustion requirement "effect[s] a proper balance between the roles of state and federal judicial institutions in protecting federal rights." *Ogle v. Estelle*, 592 F.2d 1264, 1267 (5th Cir. 1979).[8]  The exhaustion rule is designed to

---

[8] Decisions of the former Fifth Circuit issued before October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

allow the states the initial "opportunity to pass upon and correct errors of federal law in the state prisoner's conviction," *Fay v. Noia*, 372 U.S. 391, 438 (1963), while discouraging the federal courts from unduly or prematurely interfering with state-court proceedings. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982).

To exhaust his claims properly, a prisoner must fairly present his federal constitutional claims through one complete round of the state's trial and appellate review process, either on direct appeal or in state post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 & 848 (1999) (observing that the question is "not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts"). In Alabama, exhaustion includes presentation of the relevant issues to the Alabama Supreme Court. *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003). Where a claim has not been exhausted in the state courts and the time in which to present the claim has expired, federal courts deem the claim to be procedurally defaulted, precluding federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Ferguson v. Sec'y for Dep't of Corr.*, 580 F.3d 1183, 1193 (11th Cir. 2009).

When a state prisoner has not exhausted a federal claim or has procedurally defaulted it in the state courts, he may secure federal habeas review of the merits of that claim only upon a showing of both cause for the default and resulting prejudice.

*See Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010); *In re Davis*, 565 F.3d 810, 821 (11th Cir. 2009).  "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (quotation marks and citation omitted); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson*, 353 F.3d at 892 (quotation marks and citation omitted).  Alternatively, a petitioner may overcome a default by alleging that the failure to review the claim will result in a "fundamental miscarriage of justice"—an exception that applies "where a constitutional violation has resulted in the conviction of someone who is actually innocent." *House v. Bell*, 547 U.S. 518, 536 (2006) (citation omitted).

**B.    Limits on the Scope of Habeas Review**

Even when a petitioner's claims are timely and he has properly exhausted all available state-court remedies, the AEDPA significantly limits the scope of review. *See* 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 402–03 (2000).  Where a claim was adjudicated on the merits in state court, § 2254 precludes habeas relief unless the state court's adjudication of the claim resulted in a decision (1) "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Federal courts presume the correctness of factual determinations by state courts, subject to rebuttal only upon a showing by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405; *Early v. Packer*, 537 U.S. 3, 8 (2002)). Additionally, "[a] state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Id.* (citing *Williams*, 529 U.S. at 405; *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)).

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted).  For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410. "Indeed, 'a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Renico*, 559 U.S. at 773 (quoting *Williams*, 529 U.S. at 411).  Rather, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and quotation marks omitted).  Likewise, "a state-court factual determination is not unreasonable [for purposes of § 2254(d)(2)] merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question," this does not justify relief on habeas review. *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).

## IV.  ANALYSIS

These standards govern the court's analysis of Tillman's petition, which brings habeas claims in three basic categories: (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, and (3) trial court error. Even so, the constitutional claims within those categories overlap significantly. *See* Doc. 1 at 5, 7, 9–12, 14, 20–22.  In the following analysis, the court will identify the issues by topic, as well as by the numbering in Tillman's habeas petition.  Because Tillman asserts that "the primary issue is the denial of [his] fundamental 6th

Amendment right to counsel of choice," Doc. 20 at 2–3, the court's analysis begins with these claims.

## A.   Denial of Continuance and Counsel of Choice Claims

It is undisputed that Tillman exhausted these claims. Doc. 11 at 19.   The respondents dispute, however, that the state courts' denial of relief resulted in a decision that was contrary to or an unreasonable application of clearly established federal law, or otherwise resulted in a decision based on an unreasonable determination of the facts in light of the evidence. Doc. 11 at 19–27.   The court agrees for the following reasons.

### 1.   *Trial Court Error––Claim 3.d.*

Tillman claims the trial court "summarily and arbitrarily denied" him the Sixth Amendment right to choose his counsel "and in so doing committed a structural error" when it refused to grant his motion to continue the trial so that Schoen could represent him. Doc. 1 at 20–21; Doc. 20 at 38.   He argues that the Alabama Court of Criminal Appeals' rejection of this claim on collateral appeal is an unreasonable application of *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), and its progeny and an unreasonable determination of the facts in light of the evidence before it. Doc. 20 at 2–3, 24.

"Under the Sixth Amendment, 'a defendant who does not require appointed counsel' enjoys both the right to effective assistance of counsel and the right 'to

choose who will represent him." *United States v. Jimenez-Antunez*, 820 F.3d 1267, 1270 (11th Cir. 2016) (quoting *United States v. Gonzalez–Lopez,* 548 U.S. 140, 144 & 147 (2006)).  However, because "it is a settled principle that the right to counsel of one's choice is not absolute as is the right to the assistance of counsel," *Gandy v. Alabama*, 569 F. 2d 1318, 1323 (5th Cir. 1978), the right to counsel of choice "must bend before countervailing interests involving effective administration of the courts." *Jimenez-Antunez*, 820 F.3d at 1270 (citing *Birt v. Montgomery*, 725 F.2d 587, 593 (11th Cir. 1984) (en banc)).

"The matter of continuance is traditionally within the discretion of the trial judge," *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), who has "wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of [his] calendar." *Gonzalez–Lopez*, 548 U.S. at 152.  "Not the least of [the trial judge's] problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Morris v. Slappy*, 461 U.S. 1, 11 (1983).  Therefore, "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Id.* (quoting *Ungar*, 376 U.S. at 589).  "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to" infringe upon a defendant's right to counsel of choice. *Ungar*, 376 U.S. at 589.  "The answer must be found in the

circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id*.

Here, the ACCA found that the first time Tillman informed the court that he wanted new counsel was in the letter received on June 15, 2015, the Friday before trial began on the following Monday. Doc. 11-31 at 7. Despite Tillman's inability to compensate him, Schoen had agreed to represent Tillman on a pro bono basis as long as Judge Reeves continued the trial "until at least the end of August 2012." Doc. 11-31 at 7. Because the request was on the eve of trial and necessitated a continuance, the ACCA concluded that Tillman's change in representation "would have frustrated the public interest in the fair and effective administration of justice." Doc. 11-31 at 7. Additionally, the ACCA concluded that Tillman's motion to substitute counsel was untimely "and the court properly prohibited [him] from using his ability to discharge his attorney as a way to delay proceedings." Doc. 11-31 at 8. None of these findings are contrary to or involve an unreasonable application of clearly established federal law or are based on an unreasonable determination of the facts in light of the evidence presented to the trial court.

Tillman had numerous opportunities to raise the issue of new counsel with the court, including but not limited to the April 3, 2012 status hearing; the May 1, 2012 status conference; the May 8, 2012 docket call; and the June 12, 2012 hearing on the motion for continuance. And Tillman did not need a hearing to put the court on

notice that he was seeking new counsel.[9]  There is no evidence before the court that Tillman informed Judge Reeves of his desire for Schoen to represent him at any of these hearings or through any written filing or letter until the Friday before trial.  In denying the motion, Judge Reeves specifically stated that he "advised Mr. Tillman on several occasions—each occasion that he came to court that if he was going [to] hire a lawyer he needed to proceed to do that and not wait until the last minute and try to do that." Doc. 11-16 at 174.  And the order setting the trial made clear that no continuances would be granted "except for extreme circumstances." Doc. 11-12 at 50.  Additionally, Tillman did not even mention his desire for new counsel in his May 23, 2012 letter to ACCA Judge Welch even though he described other reasons for requesting a continuance. Doc. 11-26 at 92.  Similarly, the motion for a continuance filed by Tillman's trial counsel on June 11, 2012 was substantively identical to Tillman's letter and did not mention his desire for new counsel. Doc. 11-13 at 13.

While there may be evidence that Tillman was acting behind the scenes to secure Schoen as counsel, these efforts were hidden from Judge Reeves until the last business day before trial.  This lack of communication with the trial court is fatal to Tillman's claim.  Moreover, the record does not establish that Schoen definitively agreed to represent Tillman.  Instead, he explicitly conditioned his agreement to

---

[9] In fact, Tillman mailed his letter to the ACCA on May 23, 2012 requesting a continuance.

represent Tillman on securing both a trial continuance and investigative funds. Schoen also had a specific scheduling conflict with the June 18, 2012 trial date. Doc. 11-13 at 20.

A trial court maintains "wide latitude in balancing the right of counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citations omitted).  Trial courts therefore retain the discretion to "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Id*.  This was just such an exercise of discretion. Consistent with these principles, the ACCA's affirmance of the trial court's denial of Tillman's eleventh-hour effort to change counsel, which would have necessitated a trial continuance, was not contrary to or an unreasonable application of federal law, and it was not an unreasonable determination of the facts in light of the evidence presented in the trial court.  Accordingly, this claim is due to be denied.

### 2.   *Ineffective Assistance of Trial and Appellate Counsel—Claims 1.a. and 2.a.*

Tillman makes two ineffective assistance of counsel claims relating to his right to counsel of choice and his motion for a continuance.  First, at the trial court level, Tillman argues that his lawyers did not properly argue for a continuance to permit him to obtain his preferred counsel. Doc. 1 at 5, 7, 20, 22.  Tillman claims that there were "inherent and actual conflicts of interests between" him and Jacobs related to Jacobs' readiness for trial and his own "clearly expressed wish to be

represented by Schoen." Doc. 20 at 27.   Second, at the appellate level, Tillman contends that his lawyers were ineffective for failing to argue on direct appeal that he was denied his right to choose his counsel. Doc. 1 at 3, 9.   The court sets out the legal standards for establishing ineffective assistance of counsel below and then addresses Tillman's claims.

### a.   Standard for Ineffective Assistance of Counsel Claims

The Sixth Amendment affords a criminal defendant the right to counsel.   "It has long been recognized that the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *see also Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).   Sixth Amendment claims of an attorney's ineffective assistance at trial or on appeal are governed by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires a showing (1) that "counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense" because the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   The petitioner in a habeas corpus action bears the burden of establishing both components of the claim. *Lawhorn v. Allen*, 519 F.3d 1272, 1293 (11th Cir. 2008) (citing *Atkins v. Singletary*, 965 F.2d 952, 958–59 (11th Cir. 1992)).

To demonstrate constitutionally deficient performance, "the defendant must 'identify the acts or omissions . . . that are alleged not to have been the result of

reasonable professional judgment,'" and he must "show that counsel's representation fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." *Lawhorn*, 519 F.3d at 1293–94 (quoting *Strickland*, 466 U.S. at 687 & 690). This review is "highly deferential" and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Indeed, cases warranting habeas relief based on an ineffective assistance claim "are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quotation and citation omitted).

As to the second requirement, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

If a court does not find counsel's performance to be constitutionally deficient, it may decline to address whether prejudice resulted. *Walker v. Jones*, 10 F.3d 1569, 1573 (11th Cir. 1994). Likewise, a court may decline to address the performance prong if it is convinced that the prejudice prong cannot be satisfied. *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010).

This court's review of the application of *Strickland* in the context of § 2254(d) is "doubly" deferential. *Richter*, 562 U.S. at 105.  "The inquiry is not then 'whether counsel's actions were reasonable,' but instead 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Moody v. Thomas*, 89 F. Supp. 3d 1167, 1199–2000 (N.D. Ala. 2015) (quoting *Richter*, 562 U.S. at 105).  In other words, the district court must determine whether the state court's application of the *Strickland* standard was unreasonable, not whether defense counsel's performance fell below the *Strickland* standard. *Id*.  This "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1268 (11th Cir. 2012).  Additionally, "[s]tate court findings of historical facts made in the course of evaluating an ineffectiveness claim are subject to a presumption of correctness under 28 U.S.C. § 2254(d)." *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001).

### b.    Application of *Strickland*

Tillman argues that his trial counsel was ineffective for not properly arguing for a continuance to permit him to obtain his counsel of choice. Doc. 1 at 5, 7, 20, 22.  He also contends that his appellate counsel was ineffective for failing to argue on direct appeal that he was denied his right to representation by the counsel of his

choice. Doc. 1 at 3, 9.  The ACCA considered and rejected these claims. Doc. 11-31 at 10–11.  The ACCA observed that "[e]ach of these ineffective-assistance-of-counsel claims relate to Tillman's underlying claim that the court denied his right to be represented by his counsel-of-choice." Doc. 11-31 at 10.  Because the substantive claim was meritless, the court found that Tillman's counsel was not ineffective for failing to raise a meritless claim. Doc. 11-31 at 11.

The ACCA was correct in finding that counsel cannot be not ineffective for failing to argue a meritless issue. *See Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them."); *see also Johnson v. United States*, 2013 WL 944803, at *3 (M.D. Ala. Feb. 15, 2013) ("Because Johnson's substantive claim regarding use of the robbery conviction to enhance his sentence under the ACCA lacks merit, he cannot demonstrate that his counsel rendered ineffective assistance by failing to argue on the same basis that the robbery conviction could not be used to sentence him under the ACCA.").  The ACCA's rejection of these claims therefore was not an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence before it.

## B.   Remaining Claims

### 1.    *Ineffective Assistance of Trial Counsel—Claims 1.b to 1.h.*

In his remaining ineffective assistance of trial counsel claims, Tillman alleges

that his lawyers did not (1) object to evidence of a prior conviction; (2) object to public access during voir dire; (3) object when a juror slept through much of the second day of trial; (4) file a motion *in limine* or motion to suppress related to his videotaped confession; (5) object at crucial moments during the cross-examination of Lawden Yates, the defense firearms expert; (6) sufficiently test the State's case, and (7) subpoena certain records and witnesses or appropriately cross-examine the State's witnesses.[10] Doc. 1 at 5, 7, 20, 22.

Tillman raised all of these claims in his Rule 32 petition except the last one. Docs. 11-13 at 3 & Doc. 11-26.  He also did not raise this last claim on direct appeal. *See* Docs. 11-18 & 11-20.  Because this claim has not been through a complete round of review in the state-court system, it is unexhausted. *See Pope v. Sec'y, Dep't of Corr.*, 680 F.3d 1271, 1286–87 (11th Cir. 2012).  This claim also is procedurally defaulted since Tillman cannot assert it in a new Rule 32 petition because that petition would be successive and untimely. *See Ferguson*, 580 F.3d at 1193.  And Tillman has not shown cause and prejudice or a fundamental miscarriage of justice to overcome this procedural default.

As for the claims that have been exhausted, the ACCA concluded that

---

[10] More specifically, in this last claim Tillman contends that his counsel (1) failed to "object to highly prejudicial cross examination of defense witnesses," (2) refused to subpoena "certain records and individuals that would have negated" the State theory of intent to murder, (3) and did not cross examine witnesses who changed their testimony from the first to the second trial. Doc. 1 at 7, 20, 22; Doc. 11 at 28–31.

"[b]ecause Tillman merely made general allegations of prejudice and failed to state specific facts indicating how he was prejudiced by counsel's actions, Tillman failed to meet his burden to plead the full factual basis of this claim." Doc. 11-31 at 13. For that reason, the ACCA affirmed the denial of Tillman's claims without an evidentiary hearing. Doc. 11-31 at 13.

In analyzing these claims, AEDPA limits the court's review to whether the state-court determination that Tillman failed to plead sufficient facts in his Rule 32 petition to make out a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent.  The Eleventh Circuit instructs the court to "look only to the allegations in [the petitioner's] Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel." *Powell v. Allen*, 602 F.3d 1263, 1273 (11th Cir. 2010). Where a petitioner "has made additional allegations and submitted more evidence in support of his claim of ineffective assistance of counsel in his habeas petition," AEDPA instructs the court not to "consider such supplemental allegations or evidence when reviewing the reasonableness of the state court's resolution of [the] claim, which was based on the allegations before it." *Id* at 1273 n.8; *see also Cullen v. Pinholster*, 563 U.S.170, 181 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

Understanding the scope of review, the court cannot find that the ACCA unreasonably determined that Tillman's Rule 32 petition failed to allege specific facts regarding these particular ineffective assistance of counsel claims. Tillman did not provide any facts, reasoning, or analysis in his Rule 32 petition to support the conclusion that counsel's performance was "outside the wide range of professionally competent assistance" as required by *Strickland*, 466 U.S. at 690. In fact, many of his claims consisted of one-line statements or simple conclusions without any analysis whatsoever. *See* Doc. 11-26 at 77; Doc. 11-31 at 13. Likewise, Tillman did not provide any factual support for a finding that there was a reasonable probability that the outcome of his trial would have been different if counsel performed differently. On the facts presented to the ACCA, there is no basis for concluding that trial counsel was deficient or that any alleged deficiency resulted in prejudice to Tillman. Accordingly, the ACCA's dismissal of these claims was not contrary to or an unreasonable application of federal law. *See Powell*, 602 F.3d at 1275 (finding that conclusory allegations are insufficient to meet the *Strickland* standard).

## 2. *Ineffective Assistance of Appellate Counsel—Claim 2.b.*

Tillman contends that his counsel on direct appeal did not communicate with him or send him a copy of the appellate brief before filing it in the ACCA. Doc. 1 at 21. Tillman did not raise this claim on direct appeal or in his Rule 32 petition, and therefore it is procedurally defaulted since any subsequent Rule 32 petition would

be successful and untimely.  Additionally, Tillman has not established cause for the default and resulting prejudice or a fundamental miscarriage of justice to overcome his procedural default.  Accordingly, habeas review of this claim is precluded. *See Spencer*, 609 F.3d at 1179–80.

### 3.   *Trial Court Errors––Claims 1.b to 1.e.*

#### a.   **Denial of the Rule 32 Petition Without an Evidentiary Hearing**

Tillman complains that the Rule 32 court denied his petition without an evidentiary hearing. Doc. 1 at 14.  Tillman does not, however, allege that the state court's purported error deprived him of procedural due process.  Even viewing this claim through the lens of procedural due process, the claim would fail.  "Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but 'an alleged defect in a collateral proceeding does not state a basis for habeas relief.'" *Alston v. Dep't of Corr.*, 610 F.3d 1318, 1325–26 (11th Cir. 2010) (quoting *Quince v. Crosby*, 360 F. 3d 1259, 1262 (11th Cir. 2004)).  This type of "challenge concerns a state matter because [Alabama] provides for post-conviction procedures through its state statutes.  These collateral proceedings are a state created right.  Therefore, the state court finding[s] . . . concern[] the state's application of its own procedures, not the legality of [Tillman's] detention." *Id*. at 1326.  This claim therefore is due to be denied.

### b.      Admission of Evidence of Tillman's Minnesota Conviction

Tillman contends the trial court allowed the jury to hear inadmissible evidence of his misdemeanor conviction in Minnesota for solicitation of prostitution. Doc. 1 at 20.  On direct appeal, the ACCA found that Tillman failed to preserve this claim because the record demonstrated that the trial court had not ruled on the motion. Doc. 11-20 at 5.  "'An adverse ruling is a preliminary requirement to preservation of error and appellate review." *Harrell v. State*, 555 So. 2d 257, 259 (Ala. Crim. App. 1989) (quoting *Van Antwerp v. State*, 358 So. 2d 782, 790 (Ala. Crim. App. 1978)).  Accordingly, this claim is unexhausted and procedurally defaulted, and Tillman has not established cause for the default and resulting prejudice, nor has he shown a fundamental miscarriage of justice. *Mincey v. Head*, 206 F.3d 1106, 1135 (11th Cir. 2000) ("It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'").  Thus, habeas review of this claim is precluded.[11] *See Spencer*, 609 F.3d at 1179–80.

---

[11] Even if this claim was not procedurally defaulted, an erroneous evidentiary ruling alone is not a sufficient basis for habeas relief, *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983), because Tillman must show also that the ruling affected the fundamental fairness of the trial. *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998).  He has not done so.

### c.     Denial of Motion for New Trial Based on Insufficient Evidence of Intent

The entirety of this claim in Tillman's petition reads, "The State presented insufficient evidence to convict Tillman of murder." Doc. 1 at 20.  Tillman raised this argument on direct appeal and it was rejected. Doc. 11-20 at 6–8.  Tillman does not explain how the state court's rejection of this claim on direct appeal offends § 2254(d), but the court construes this as a due process claim.

The Due Process Clause of the Fourteenth Amendment governs claims challenging the sufficiency of the evidence supporting a jury verdict. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)); *see also* Ala. R. Crim. P. 20 (providing that a trial court "shall direct the entry of a judgment of acquittal as to any charged offense . . . for which the evidence is insufficient to support a finding of guilty beyond a reasonable doubt").  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. "[F]ederal courts must look to state law for the substantive elements of the criminal offense, . . . but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (citation and quotation marks omitted).

Tillman's conclusory claim fails to overcome the presumption of correctness owed to the ACCA's factual findings related to the evidence presented at trial. *See*

28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  Furthermore, even if the record "reflect[ed] facts that support conflicting inferences [regarding Tillman's intent], there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001) (citations omitted).

Due process claims challenging sufficiency of the evidence "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman*, 566 U.S. at 655.

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.  And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was objectively unreasonable.

*Id.* (internal citations and quotations marks omitted).

After carefully reviewing the trial record, controlling case law, and the habeas record, the court concludes the state court's rejection of Tillman's claim was not objectively unreasonable.  Despite Tillman's argument that the shooting was accidental, the State offered evidence of his intent to murder his wife, including his

extramarital affair and engagement. Doc. 11-13 at 66; Doc. 11-20 at 3–4, 7–8.  The

State presented evidence at trial that Tillman would have been fired from his job as

a pastor if he had divorced his wife. Doc. 11-20 at 4.  Church members testified that

the turkey shoots were Tillman's idea, the shotguns were checked to ensure that they

were unloaded after each shoot, and that he had sole possession of the guns before

his wife was shot, thus allowing the jury to infer that Tillman loaded the gun in

question. Doc. 11-13 at 66; Doc. 11-20 at 3.  Additionally, the State presented

testimony from Blancet that Tillman later admitted that the shooting was not an

accident. Doc. 11-13 at 66; Doc. 11-20 at 4.  Based on this evidence and the "two

layers of judicial deference," the court concludes that Tillman cannot establish a

violation of due process.  Therefore, the ACCA's dismissal of this claim was not

contrary to or an unreasonable application of federal law.

### d.    The Trial Court's Appointment of Ineffective Appellate Counsel

Tillman alleges that he received deficient appellate counsel because the court

was aware at the time of the appointment that his lawyer had been disciplined by the

Alabama State Bar. Doc. 1 at 21–22.  This claim is unexhausted because Tillman did

not raise it in his Rule 32 petition.  It also is procedurally defaulted and Tillman has

not shown cause and prejudice for the default or a fundamental miscarriage of justice

to overcome the procedural default.  Accordingly, habeas review of this claim is

precluded. *See Spencer*, 609 F.3d at 1179–80.

## IV. RECOMMENDATION

For these reasons, the Magistrate Judge RECOMMENDS that Tillman's § 2254 petition be DENIED.[12]

In accordance with Rule 11 of the *Rules Governing 2254 Proceedings*, the Magistrate Judge further RECOMMENDS that a certificate of appealability be DENIED. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation omitted). For the reasons set out above, the Magistrate Judge finds that Tillman has failed to make the requisite showing.

## V. NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to

---

[12] Tillman also has filed a motion requesting a status conference. Doc. 22. Because this recommendation informs Tillman of the status of his case, the Magistrate Judge RECOMMENDS that this motion (Doc. 22) be DENIED.

which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the petition that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

DONE and ORDERED on July 30, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE